# N. Y. SUPERIOR COURT.

## JOHN MITCHELL agt. JOHN A. DIX.

The act of congress of March 3, 1863, and the amendment of May 11, 1866, provides for the removal into the United States courts of actions founded upon facts which occurred *during the rebellion*.

Therefore they do not authorize the removal of an action into that court, commenced by the plaintiff in a state court, against a United States military officer for trespass and false imprisonment, where the arrest was made on the 14th *of June*, 1865, and subsequent imprisonment in Fortress Monroe followed,

The rebellion at the time of arrest was at an end.

*Special Term, November, 1871.*

THIS motion is, to remove the cause into the U. S. circuit court, and it proceeds on section 5 of the act of March 3d, 1863, as amended by section 1 of the act of May 11, 1866. The action is for trespass and false imprisonment.

S. J. GLASSEY, *for motion.*

By the constitution of the United States (*art. 3, sec. 2,*) that the "judicial power shall extend to all cases in law and equity arising under the constitution, the laws of the United States," &c.

This case arises under the laws of the United Sates.

The act complained of was done dy the defendant in time of war, in his official military capacity under orders of his superior officer, and in obedience to the laws which provided for raising armies, officering and governing them, and directed the prosecution of the war against the rebels.

The state of war ceased to exist in August, 1866 (*See Proclamation of President of that date, U. S. Statutes at*

*Large, vol.* 14, *appendix; U. S.* agt. *Anderson,* 9 *Wall.,* 56.) Whether or not the arrest was proper is a question ex- clusively for the U. S. courts to determine. Had a writ of *habeas corpus* issued from a state court while plaintiff was under arrest in N. Y., obedience to it could not have been enforced (*Ableman* agt. *Booth,* 21 *How.,* 506; *People on rel. of Barrett* agt. *Nugent, decided by Mr. Justice* WHITE, *Superior Court,* Sept., 1863.)

2. The acts of congress of March 3, 1863, (*Stat. at Large, vol.* 12 755,) and May 11, 1866 (*Stat. at Large, vol.,* 14, 46,) are constitutional and valid (*Jones* agt. *Seward,* 17 *Abb.,* 377; *and see Patrie* agt. *Murray,* 9 *Wall.,* 274; *Hodgman* agt. *Millward,* STORY, *J.,* 3 *Grant's Cases,* 406–418 ; *Kulp* agt. *Richetts, id.,* 420.)

3. The forms prescribed by the act of congress having been complied with, the state court at once loses jurisdiction and the propriety of the transfer can be inquired into only in the U. S. court, which will return it to the state court if the transfer was improper (*Illius* agt. *Harlem RR. Co.,* 13 *N. Y.,* 597 ; *Gorden* agt. *Longstreet,* 16 *Peters,* 97 ; *Stevens* agt. *Phœnix Ins. Co.* 41 *N. Y.,* 149 ; *Fargo* agt. *McVickers,* 38 *How.,* 1 ; *Kanouse* agt. *Martin,* 15 *How., U. S.,* 198.)

The cases cited by plaintiff (*St. of Ohio* agt. *Bliss, McLean* agt. *Wright, and People* agt. *Gant* 3 *Grant's Cases*) are not in point. They are *habeas corpus* cases—don't refer to the acts of congress in question, and are besides, of no authority whatever.

All proceedings should be suspended.

ROGER J. PAGE, *opposed.*

I. That the acts of congress of March 3d, 1863, and the act amendatory of said act approved May 11th, 1866, above refered to are unconstitutional.

II. That if the said acts are unconstitutional they, have no application to the case at bar.

(a.) We hold, that the acts of congress in question are unconstitutional, and that they confer exclusive jurisdiction in cases where the state courts have concurrent if not sole jurisdiction (vide Wetherbee agt. Johnson, 10th Mass Rep., 412 ; State of Ohio agt. Bliss, 3 Grant's Cases, 427 ; Bressler agt. Gaine, 3 Grant's Cases, 447; McLain agt. Bright, 3 Grant's Cases, 437 ; Kneeder agt. Lane, Smith agt. Lane, Nichols agt. Lehmen, 3 Grant's Cases, 465.)

(b.) They confer jurisdiction on the courts of the United State, in controversies between citizens of the same state, when none is conferred by the constitution of the United States (See Act 3d, sec. 2, Const. of the U. S., Story's Com'nt., sec. 894.)

(c.) Again, by the 6th section, art. 1st, of the constitution of the state of New York, it is provided, that no person shall be held, &c., and section 30th, 3d vol., Revised Statutes of New York, page 943, enacts, that every person who shall without lawful authority, forcibly seize and confine another, &c., with intent to cause such other person to be sent out of the state against his will, &c., shall, upon conviction, be punished by imprisonment, &c., not exceeding ten years.

The provision of our state constitution. and the statute in pursuance thereof is, the supreme law of the case at bar—unless there is some provision in the constitution of the United States, which overrides the state constitution and law of the state upon the very question of forcible or fraudulent deportation of a citizen of one state to another. There is no such antagonism between the two constitutions, on this subject, but they are in perfect and complete harmony.

(a.) These acts confer original criminal jurisdiction over the local criminal law of the state, and ousts the local criminal jurisdiction of the state courts, which clearly is not one of the powers delegated by the constitution, to the United States, and not being delegated must be reserved to the states.

III. (a.) That of the acts of March 3d, 1863, and the act

amendatory of said act approved May 11th, 1866, are con-
stitutional, they have no application to the case at bar.

The burden is upon the petitioner to make out affirma-
tively, that the case he seeks to remove is, of the class
described in the act, and he is held to the most strict con-
struction of the statute, as it is in derogation of the remedial
rights of the respondent (*See cases cited above, also the case
of Hudjeson* agt. *Millwerd,* 3 *Grant's Cases,* 415.)

The war had ended at the date of the arrest and imprison-
ment.   The armies of the Confederate states had surren-
dered.   Those of the United States were being mustered out
of service as fast as possible, and all the people of the two
late beligerent powers were returning to the path of peace.

The proclamation of President Johnson declaring the in-
surrection ended in certain specified states, can have no ap-
plication in ascertaining the termination of the war affecting
the case at bar.   New York was not in insurrection, and
was not one of the states specified in said proclamation, be-
sides the existence of a state of war or peace is not to be
determined alone by a proclamation of the president, but
like any other general political fact, is the subject of judicial
cognizance (*See Cogyens* agt. *Frunk,* 4th vol. *Amer. Law
Reg.,* 700, *and the case of Brigler* agt. *Waller,* 3 *Amer. Law
Fines Reports,* 157.)

By section 13 of the act of July 17th, 1862, the President
is authorized at any time thereafter by proclamation to ex-
tend to persons who have participated in the late rebellion in
any state or part thereof, pardon and amnesty, &c. (*See whole
paragraph.*)   In pursuance of which act of congress, Andrew
Johnson President of the United States, did on the 29th day
of May, 1865, issue his proclamation of amnesty and pardon
upon certain terms and conditions, all of which were com-
plied with on the part of the respondent, and he thereby be-
came rehabitated in all his rights as a citizen of the United
States—if he had ever forfeited these rights—which matters
are of record in the archives of the United Ssates (*See

*Johnson Proclamtions,* 709, *Military and Naval History of the Rebellion.*)

(*c.*) The question now arises, whether the alleged trespasses were done by virtue or under color of any authority derived from or exercised by the President of the United States, or any act of congress. It is not alleged, that the alleged trespasses were done directly by authority of the President and of acts of congress—what is the true legal construction of the word authority—It means proper, legal and constitutional authority.

If the President or congress have the legal and constitutional authority to do the acts in question, how then can a mere military appointee of the President and congress do that which their creator cannot legally and constitutionally do. It is not to be presumed judicially, at least, that the mere private will of the President or of one of his military appointees, viz., the major-general commanding the department of the east by virtue of the words, color of authority, is to overrule, nullify and set at defiance the most solemn guarantees of personal liberty contained in the 5th and 6th amendments of the constitution, the supreme law of the land. Yet, such is the pretension set up in this petition.

McCunn, J.—It appears by the papers before me, that the plaintiff, a citizen of the state of New York, was arrested in this city, on the 14th of June, 1865, by order of the defendant; was transported to Fortress Monroe in the state of Virginia, and was there imprisoned for four months and sixteen days. This arrest, transportation and imprisonment constitute the gravamen of the action.

Into the merits of the action, I am not permitted to inquire, nor on this motion, am I prepared to pronounce upon the constitutionality of the acts in controversy. The motion may be decided on another and entirely satisfactory ground.

Both the act of March 3d, 1863, and the amendment of May 11th, 1866, provide for the removal into the federal

courts of actions founded upon facts which occurred *during the rebellion.* The plaintiff was arrested on the 14th day of June, 1865. In my judgment, the rebellion was then at an end.

The Confederate government was then annihilated its authority everywhere overthrown; its armies dispersed or surrendered; its resources and its territory all in the possession of the federal forces; the power and dominion of the Union re-asserted and established; insomuch, that not a solitary soldier was in array against the United States, nor an inch of territory exempt from its supremacy. At this time and in this circumstance, when the authority of the Union was everywhere and by every one acknowledged, it would be an abuse of terms and a contradiction of a flagrant fact, to say that the rebellion was in existence. It may be that martial law was still prevalent, but the rebellion was no more. The rebellion was a fact, neither to be created, nor destroyed by a proclamation. And when it ceased *de facto* to exist, a proclamation could not continue its existence. Does the rebellion now exist? And, yet on the 14th June, 1865, every species of resistance to the Union was as effectually at an end, as at this present moment.

The acts then, of the defendant, on which this suit is founded, not having occurred during the rebellion, the action is not within the provisions of the laws of 1863 and 1866, and the motion to remove it into the federal courts, must be denied.